## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CHERYL YSLAS, on behalf of herself, and all other plaintiffs similarly situated, known and unknown,

           Plaintiff,

v.

WAL-MART ASSOCIATES, INC., D/B/A SAM'S CLUB, AND SAM'S CLUB, A DIVISION OF WAL-MART STORES, INC.

           Defendants.

Nº. 22-cv-

**Hon. Judge**
**U.S. District Court Judge, Presiding**

Hon. Judge
Magistrate Judge

***JURY DEMAND***

## COMPLAINT

NOW COMES Plaintiff, CHERYL YSLAS, ("Plaintiff" or "named Plaintiff"), on behalf of herself and all other Plaintiffs similarly situated, by and through her attorneys, John W. Billhorn and Samuel D. Engelson of Billhorn Law Firm, and for her Complaint against Defendants, WAL-MART ASSOCIATES, INC., D/B/A SAM'S CLUB, AND SAM'S CLUB, A DIVISION OF WAL-MART STORES, INC. (the "Defendants" or "Sam's Club"), states as follows:

## I.     NATURE OF ACTION

1.     This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq* ("COMPS") and the Colorado Wage Act, C.R.S. § 8-4-101, *et seq.* Plaintiff also asserts an individual claim under Colorado Wage Act, C.R.S. § 8-4-101, *et seq.* as to unpaid, earned and vested compensation that remains unpaid by Defendants.

## II.    <u>JURISDICTION AND VENUE</u>

2.    Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for the supplemental Colorado statutory claims, pursuant to 28 U.S.C. §1367. Venue lies in the District of Colorado in that during all times relevant to the employment relationship, Plaintiff performed work in this district and is a resident of this district and Defendants are or were engaged in business in this district.

## III.    <u>THE PARTIES</u>

3.    Defendants, **WAL-MART ASSOCIATES, INC., D/B/A SAM'S CLUB AND SAM'S CLUB, A DIVISION OF WAL-MART STORES, INC.** (hereinafter referred to collectively as "Sam's Club") are Arkansas corporations that own and operate approximately fifteen (15) Sam's Club membership-only warehouse retail stores across the Denver-metro area and other locations in Colorado.[1]

4.    Sam's Club sells a wide variety of products including perishable food products, alcohol, over-the-counter medications, and other consumer products such as clothing, furniture, electronics (TVs, home theatre equipment, computers), jewelry, and a host of other consumer items.

5.    Sam's Club's primary business address is 702 S.W. 8th St. in Bentonville, Arkansas.

6.    Sam's Club is an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information and belief formed after reasonably inquiry, satisfies the minimum annual gross sales

---

[1] See https://www.samsclub.com/locator

dollar amount required by 29 U.S.C. §203(s)(1)(A)(ii).

7.      Sam's Club ordered, used and handled goods and materials, including perishable food products and alcoholic products, furniture, medicines and other products which moved in interstate commerce prior to being used or purchased in Colorado.

8.      During all relevant times, Sam's Club was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff and therefore, as defined under both the federal and state statutes relied upon, is an "employer."

9.      Sam's Club, through their upper-management employees, oversaw all operations of each Sam's Club warehouse in Colorado, including business strategy and daily operations, and was responsible for assigning tasks, creating and distributing schedules, staff supervision, wage policies and otherwise oversaw all aspects of Sam's Club's business operations and customer interactions.

10.     Plaintiff was directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Sam's Club, via their upper-management employees, including Store Manager John Williford. Sam's Club in turn responded to those communications with the authority described herein.

11.     Plaintiff, **CHERYL YSLAS,** is a former Membership Representative ("MR") and Sales and Training Manager ("STM") employee of Defendants.[2] Plaintiff was initially hired as an MR. Later in her employment, the job title was changed to STM, but the duties and pay remained exactly the same.

---

[2] Any reference to STM incorporates, by reference, MRs whose job titles were changed to STM. As such, for purposes of this Complaint, STM includes MRs, and they are one in the same.

12.     While Plaintiff was initially advised at the start of her employment with Sam's Club that she would be training lower-level, hourly associates on Sam's Club's upselling techniques, including selling Premium Memberships and Sam's Club credit cards, Plaintiff spent much of her time working the registers like a regular cashier, while associates simply watched Plaintiff work.

13.     Plaintiff was compensated on a salary basis during her entire employment with Sam's Club. At times, Plaintiff was provided with certain, non-discretionary bonuses for sales performance.

14.     Through her employment, Plaintiff did not exercise independent discretion or judgment on matters of significance, manage two (2) or more full time employees, or direct Sam's Club's overall strategic business operations.

15.     During Plaintiff's employment with Sam's Club, Plaintiff spent her working time either performing non-exempt associate work at the check-out registers or otherwise performing duties which did not require exercise of independent discretion and judgment, as Sam's Club's exerted total control over Plaintiff's job duties.

16.     As such, Plaintiff was mis-classified as a salary-exempt employee. Sam's Club should have compensated Plaintiff and other STMs as hourly employees entitled to overtime premiums for hours worked over 40 in individual work weeks.

17.     Throughout all times pertinent to Plaintiff's claims herein, Sam's Club applied a common policy Plaintiff and all STMs at all locations in Colorado, in that Sam's Club classified all STMs as "salary exempt" on the premise of the "administrative exemption" found at 29 U.S.C. §§ 207 (a)(1), 213.  See also C.F.R. § 541.200(a).

18.     Additionally, throughout all times pertinent to Plaintiff's claims herein, at all locations identified above, Sam's Club applied a common policy, developed by Sam's Club's corporate management and based upon Sam's Club's long history of operating successful and profitable warehouse retail stores, that was embedded in its management policies and procedures relative to RMs/STMs.

19.     This common policy promoted, encouraged, and resulted in STMs, including the Plaintiff herein, to participate and engage in substantially similar and comparable, essential job duties and tasks on a daily or weekly basis that:

    a)     were not primarily office or non-manual;

    b)     were not directly related to management or general business operations;

    c)     did not include the primary duty of discretion and independent judgment on matters of significance, and;

    d)     required Plaintiffs to work in excess of 40 hours per week without receiving time and one-half compensation for those hours in excess of 40 in a workweek.

20.     Additionally, the claims of Plaintiff, and the Plaintiff Class, are nearly identical in that regardless of which store location any STM herein worked, or under what Store Manager any STM herein worked, Sam's Club hired, recruited, enrolled and offered employment as an STM to all members of the Plaintiff Class premised on an a single, identical job description, including identical job duties, job objectives, job responsibilities, job qualifications (including experience and education), language skills, manual labor capabilities and general working conditions.

21.     The STM job description, which was used and implemented at all of Sam's Club stores within the District of Colorado, was drafted, approved and disseminated by Sam's Club's

corporate offices in line with Sam's Club's corporate directives and policies that were common to all Colorado stores.

22.     As a result of the common policies described above, Plaintiff and members of the Plaintiff Class were improperly classified as salary exempt and denied overtime pay for work in excess of 40 hours in a work week.

23.     Common questions of law exist among the claims of Plaintiff and members of the Plaintiff Class in that each STM claims rest upon a challenge of Sam's Club's claimed exemption(s).

24.     All other unnamed Plaintiffs, known and unknown ("members of the Plaintiff Class", "Plaintiff Class" or "similarly situated Plaintiffs"), are past or present salaried STM (or MRs whose job titles were changed to STM) employees who were also on a salary basis and did not receive overtime premiums at a rate of one-and one-half their regular hourly rates of pay for hours worked in excess of 40 in a workweek as described herein.

25.     As an employee(s) performing duties for an enterprise engaged in commerce, the named Plaintiff and all members of the Plaintiff Class were also engaged in commerce as defined by the FLSA.

## IV.    **STATUTORY VIOLATIONS**

### **Collective Action Under the Fair Labor Standards Act**

26.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiff as an opt-in representative or collective action, on behalf of themselves and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq*., to recover unpaid overtime wages and additional damages. Count II alleges

a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

### Colorado Overtime and Minimum Pay Standards Order, #38

27.     Pursuant to the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq*., Count IV of this action is brought by Plaintiff to recover unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by Plaintiff herein under COMPS are proper for certification under Federal Rule of Civil Procedure 23.

### Colorado Wage Act

28.     Pursuant to the Colorado Wage Act, §8-4-101, *et seq*., C.R.S., Count V of this action is Plaintiff to recover earned, vested and determinable unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count V. The claims asserted by Plaintiff herein under the CWA are proper for certification under Federal Rule of Civil Procedure 23.

29.     Plaintiff also brings an individual claim under the CWA to recover unpaid an quarterly bonus and accrued, unused vacation pay that were earned, vested and determinable prior to her separation that remain unpaid.

## V.     FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

30.     Plaintiff, at all times pertinent to the cause of action, was employed by Defendants.

31.     Plaintiff's employment as an MR and STM, which involved selling memberships and credit cards, was integral and indispensable to Sam's Club's business which depended on membership sales and credit card usage to operate its membership-only warehouse retail stores.

32.     At the beginning of Plaintiff's employment in approximately January 2020, Plaintiff was hired as a Membership Representative ("MR"). As an MR, Plaintiff was compensated on a salary basis and classified by Sam's Club as exempt from overtime compensation.

33.     Plaintiff's job as an MR was to upsell Sam's Club premium products such as premium memberships, credit cards, and promote mobile app downloads and usage and based on Sam's Club's corporate techniques and training, train hourly cashiers how to upsell certain premium products.

34.     In approximately January 2022, Sam's Club changed Plaintiff's job title from Membership Representative to Sales and Training Manager (STM"). Upon the change in title from MR to STM, Plaintiff's job duties and compensation were unchanged. The only difference was that Plaintiff had the word "manager" in her job title.

35.     Plaintiff began working for Sam's Club as an MR and STM in approximately January 2020. Plaintiff separated from Defendants' employment in approximately April 2022.

36.     Plaintiff worked at the Sam's Club located at 9601 Grant St. in Thornton, Colorado.

37.     Plaintiff was employed as an STM, in part as outlined and under the terms of Sam's Club's Sam's Club "Sales & Training Manager" position description.

38     Plaintiff was compensated via salary of $1,700 paid bi-monthly, every other week. Plaintiff's pay as a STM was the same as when she was a MR.

39.     Additionally, Plaintiff was to earn quarterly bonuses based on a sales target matrix developed and implemented by Sam's Club.

40.     Plaintiff typically worked Tuesday through Saturday, but often worked a sixth day each week on Sunday or Monday. Plaintiff's assigned scheduled was a 10-hour shift from 8:00

a.m. to 6:00 p.m. each day as assigned by Sam's Club and Store Manager John Williford.

41.    At a later date during Plaintiff's employment, her assigned start and end times shifted to 9:00 a.m. to 7:00 p.m. Plaintiff's standard shift remained 10 hours.

42.    Plaintiff often worked in excess her assigned schedule, because Sam's Club required Plaintiff to attend in-person or virtual meetings that started at 7:00 a.m. or 8:00 a.m. – as many as two hours before Plaintiff's scheduled start time. Other times, due to the demands of the job, Plaintiff often worked as late as 8:45 p.m.

43.    Plaintiff typically worked 60-70 hours per week due to the high demands of the STM job imposed by Sam's Club. Plaintiff worked these hours because Sam's club implemented a metric/matrix of sales targets for Plaintiff to meet each week, such that substantial work hours were required each week to meet said sales goals. Sam's Club advised Plaintiff that failure to meet weekly sales goals could result in termination.

44.    Plaintiff did not clock in and out at the beginning and end of each shift, as she was not required to do so by Sam's Club. Sam's Club did not have Plaintiff clock in and out because of the purported salary exemption claimed by Sam's Club.

45.    Plaintiff was hired as an MR/STM under the perception that she would be training and instructing hourly associates/cashiers at Sam's Club how to effectively use Sam's Club's template sales techniques, methods and platforms to sell Sam's Club's premium membership products and credit cards, as well as measure the sales performance of hourly associates. Plaintiff was advised at the time of hiring that would be observing and coaching hourly associates/cashiers regarding product upselling using Sam's Club's corporate templates, processes and techniques.

46.     Plaintiff was provided template training documents that were required to be used by her and the hourly associate cashiers Plaintiff was instructed to "coach". These materials provided specific instructions and techniques for upselling products and memberships. Plaintiff was instructed to use Sam's Club's template sales training and technique documents and not deviate from them. Plaintiff had no authority to unilaterally alter or otherwise suggest changes to Sam's Club's template sales materials and instructions.

47.     As Plaintiff began her employment as an MR/STM with Sam's Club, Plaintiff's actual day-to-day job duties differed from those asserted by Sam's Club in the interview and hiring process and as outlined in onboarding materials, including job description.

48.     Plaintiff essentially worked as an associate/cashier, performing the same duties as those hourly workers. Plaintiff spent the vast majority of her work time at the check-out registers. Plaintiff worked at the check-out registers ringing up customer purchases and used Sam's Club's corporate training and sales techniques to try and upsell memberships, credit cards and other products/services while checking out a customer's purchases.

49.     The hourly associates would simply "shadow" Plaintiff as Plaintiff performed hourly associate work at the check-out registers, including upselling customers on certain products as instructed and required by Sam's Club.

50.     While Plaintiff was working the register and upselling Sam's Club's premium products, Plaintiff was not provided with manager override access for registers. If an issue arose where Plaintiff needed certain access to complete a particular transaction (i.e., alcohol sales, discounts, errors, etc.), Plaintiff had to call for another manager-level employee to enter the appropriate override/access code(s). Plaintiff had lesser access and abilities regarding certain store

processes compared to other purported "managers".

51.     When Plaintiff was not performing check-out register and sales duties herself, she watched and observed hourly associates at registers. In her job as an STM, Plaintiff was only able provide limited guidance and feedback regarding upselling techniques based on Sam's Club's various corporate policies, training documents and sales strategies. Plaintiff was not permitted to provide any feedback other than to reiterate the sales strategies and techniques implemented by Sam's Club through stringent corporate policies.

52.     Moreover, some of Plaintiff's "feedback" to hourly cashier associates were general, common sense tactics (inserting a joke into a conversation to increase comfort level) that did not require special skill(s), higher education or other certification in sales or management.

53.     Plaintiff did not have any direct reports, such that none of the hourly associates who "shadowed" Plaintiff actually reported to Plaintiff regarding any aspect of their jobs, including upselling metrics.

54.     The hourly associates/cashiers that "shadowed" Plaintiff while Plaintiff performed check-out/cashier work reported to and were managed by Members Services Managers ("MSM"). As such, Plaintiff did not supervise two (2) or more full-time employees.

55.     Occasionally, MSMs would ask Plaintiff for comments on upselling performance of cashier associates, but Plaintiff was unable to, and did not, provide input on personnel decisions, including hiring, firing, discipline, compensation related to cashiers, or any other hourly employees based on their performance as sellers of Sam's Club's premium membership products.

56.     All discipline and other personnel decisions related to the cashier associates Plaintiff worked beside reported to an MSM, including an MSM by the name of "Skylar". "Skylar"

would handle any discipline or other concerns Plaintiff had about any particular hourly associate.

57.    Further, Plaintiff had no input and made no contributions to the quarterly evaluations of the associations she worked beside. Those functions were handled by MSMs and other upper-management level employees of Sam's Club, including Store Manager John Williford.

58.    Plaintiff's job was and is a product of Sam's Club's myriad common policies and uniform procedures developed and implemented by Sam's Club's corporate offices.

59.    Plaintiff and all other STMs were employed under the terms the STM position description and at the start of their employment, were each provided identical copies of a position description.

60.    The common terms of employment for STMs, including salary compensation for all hours worked, were intentionally and purposefully made identical by Sam's Club in each store location within the District of Colorado so that Sam's Club could establish uniformity and common practice among its various grocery stores.

61.    The uniform and common practices and policies implemented by Sam's Club, including the job duties and compensation structure, applied to all STMs, including Plaintiff. These uniform and common practices and policies as to STMs were vital for Sam's Cub to successfully replicate its consistent and proven model for profitable warehouse retail stores.

62.    Due to the uniform store model and related common policies and practices implemented by Sam's Club's corporate offices, most, if not all, of the STM job duties as described were pre-determined by Defendant's corporate policies, directives, template forms, manuals and instructions, etc.

63.     Sam's Club, through its corporate offices, executive employees and other upper management employees and Store Managers, including John Williford, exercised extensive control over the STM job duties and day-to-day assignments, duties and tasks undertaken by Plaintiff and other STMs.

64.     Plaintiffs' job duties and tasks were highly regulated and controlled, sometimes on a step-by-step and incremental level, by Sam's Club's common corporate policies, structures, manuals and forms (i.e., training materials, sales strategies, scripts, etc.) such that Plaintiff and members of the Plaintiff Class were prohibited from exercising discretion and independent judgment as to matters of significance within Sam's Club's store operations.

65.     As STMs, Plaintiffs were directed by Sam's Club (including its store managers, corporate executives, directors, etc.) to strictly adhere to corporate policies and manuals, template forms, scripts, letters and documents, computer programs, and related items that were implemented at all warehouse retail stores in the District of Colorado.

66.     Because Plaintiff and members of the Plaintiff Class were required to adhere to Sam's Club's uniform policies and guidelines, they were unable to exercise discretion and independent judgment as to the STM duties outlined by Sam's Club in position descriptions.

67.     Sam's Club directly controlled most, if not all, aspects of the day-to-day STM duties of Plaintiff and members of the Plaintiff Class, through both common and uniform corporate policies and other verbal or written instructions by Sam's Club's management employees based on said policies.

68.     This level of control exerted by Sam's Club afforded no opportunity for Plaintiff and members of the Plaintiff Class to exercise the degree of discretion and independent judgment

necessary to satisfy the administrative exemption or any other purported salary exemption.

69.     Additionally, Defendants provided step-by-step instructions to Plaintiff and members of the Plaintiff Class regarding certain metrics used to track sales of memberships, premium memberships, credit cards, items "sold in field", and other categories, which were of importance to Sam's Club in maintaining its uniform, profitable business model and which resulted in Plaintiff and other STMs exercising no discretion as to how upselling was accomplished or how to purportedly train lower-level associates on upselling strategies and techniques.

70.     Most tasks performed by Plaintiff and members of the Plaintiff Class required the review and approval of Sam's Club store managers or other management-level employees, who would review Plaintiff's work in conjunction with Sam's Club's uniform corporate procedures and guidelines, such that Plaintiff and members of the Plaintiff Class were not permitted to independently make decisions regarding the majority of the aspects of their day-to-day job duties.

71.     Plaintiff and members of the Plaintiff Class were evaluated by Sam's Club's management employees on a regular basis. Plaintiff and all STMs were evaluated using identical, universal and common job performance evaluations developed by Sam's Club's corporate office that were used by all warehouse retails stores in the District of Colorado. Plaintiff and members of the Plaintiff Class were evaluated based on how well they satisfied certain sales/upselling metrics and policies implemented by Sam's Club and whether they followed Sam's Club's instructions on how to track or achieve these metrics and standards.

72.     Over the course of their employments, Plaintiff and members of the Plaintiff Class were reprimanded by Sam's Club's upper management employees, including during regular employment evaluations, for failure to adhere satisfy the strict upselling metrics based on the

corporate guidelines, protocols, standards, policies and practices that determined most, if not all, aspects of the job duties of Plaintiff and Plaintiff Class members and how said duties were to be performed.

73.     As a result of Defendant's overbearing, extensive and minute involvement and control over the day-to-day duties of Plaintiff and members of the Plaintiff Class, STMs did not qualify for the administrative exemption or executive exemption and should have been paid by the hour, including overtime premiums for hours worked in excess of 40 in individual work weeks.

74.     Plaintiff and members of the Plaintiff Class worked or work in excess of forty (40) hours in a workweek without pay for hours worked over forty (40) at a rate of time and one-half their regular hourly rate of pay, pursuant to the requirements of the federal and state statutes herein relied upon.

75.     Sam's Club has, both in the past and presently, willfully employed Plaintiff and members of the Plaintiff Class as STMs without pay at a rate of one and one-half times their rates of pay for hours worked in excess of 40 in a workweek.

76.     The total number of hours worked by Plaintiff and members of the Plaintiff Class, and therefore the total number of overtime hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of Sam's Club, in that Sam's Club recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516. To the extent Sam's Club lacks the records required by 29 CFR Part 516, Plaintiff and members of the Plaintiff Class will be capable of providing reasonable estimates of that time, as permitted by law.

77.     The non-compliant practices as alleged herein are common to Plaintiff and all other STMs.

78.     During her entire employment with Sam's Club, Plaintiff, and members of the Plaintiff Class, were paid on a bi-monthly basis, every other week. Plaintiff, and members of the Plaintiff Class, were only paid their regular salary for all hours worked, including hours in excess of 40 hours in a single work week.

79.     Upon information and belief, Plaintiff understood that other STM employees at all Sam's Club locations in Colorado were paid in the same or similar fashion as described above and were also denied overtime premiums for hours worked in excess of 40 in individual work weeks as a result of Sam's Club's improper salary classification.

80.     Plaintiff, and members of the Plaintiff Class on a regular basis worked in excess of forty (40) hours in a workweek without pay at a rate of time and one-half their hourly rates of pay for such hours pursuant to the requirements of the federal and state law.

81.     Plaintiff and members of the Plaintiff Class were not exempt from the overtime provisions of the FLSA or COMPS. Likewise, Plaintiff and members of the Plaintiff Class were entitled to the wage protections afforded by the CWA, which applies to timely payment of earned overtime wages. As such, Plaintiff and similarly situated employees were and are entitled to overtime premiums of time and one-half their hourly rates of pay for hours worked over 40 in individual work weeks.

82.     The claims brought herein by the named Plaintiff are based on non-compliant practices and policies implemented by Sam's Club and are identical or similar to the claims of other past and present employees who were subject to the same non-compliant policies and

practices alleged herein. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

## VI.    FACTUAL ALLEGATIONS RELEVANT TO COUNT V

1-82.    Paragraphs 1 through 82 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 82 of this Count I.

83.    As mentioned in paragraphs 13, 29 and 39 of this Complaint, Plaintiff was entitled to quarterly, non-discretionary bonuses based on Sam's Club's sales target matrix. Plaintiff's compensation, including her bonus structure, was outlined by the "Sam's Club Sales & Training Manager – Membership Incentive Plan" for STMs ("Incentive Plan").

84.    The Sam's Club Incentive Plan detailed the terms and conditions under which STMs would receive quarterly sales bonuses for satisfying certain targets imposed by Sam's Club. The Incentive Plan established common policies regarding eligible participants, payout details, specific sales goals, calculations and formulas, definitions, timing mechanisms of payments, etc.

85.    Due to the intense demands of the STM job and the impact the excessive workload had on her mental and physical health, Plaintiff submitted her resignation to Sam's Club.

86.    Plaintiff resigned from her STM position on approximately April 18, 2022.

87.    Per the Incentive Plan, Sam's Club's fiscal year began February 1 each year and ended January 31 the following year. Sam's Club's first fiscal quarter was from February 1 to April 30 each year.

88.    The Incentive Plan states that "Incentive awards, if any, will be issued only after the conclusion of the incentive quarter and after a reasonable period to calculate and process results."

89.    Per the Incentive Plan and Sam's Club's target sales matrix, Plaintiff expected her 2022 Q1 bonus to be approximately $8,000.

90.    Plaintiff was not compensated the 2022 Q1 bonus.

91.    Plaintiff attempted to discuss her unpaid sales bonus with Sam's Club through their HR department following her resignation. Sam's Club, through their HR department, advised Plaintiff that she would not receive her 2022 Q1 bonus because she left Sam's Club prior to the end of 2022 Q1, or April 30, 2022.

92.    In support of Sam's Club's position on Plaintiff's unpaid bonus, Sam's Club sent Plaintiff a written bonus policy. However, the policy cited by Sam's Club was the policy for Plaintiff's manager and was unrelated to Plaintiff's title as a STM.

93.    Neither the policy sent to Plaintiff by Sam's Club's HR department following her inquiry nor the Incentive Plan make any mention of any policy that an employee must remain employed by Sam's Club through the end of the application quarter to receive the bonus.

94.    The Incentive Plan clause referenced in paragraph 88 is the only substantive clause in the Plan related to timing of incentive payments and bonuses. The only reference to "employment" in the Incentive Plan is a clause stating the Incentive Plan is not a guarantee of employment, an employment contract or other offer of employment, including that "Associates may resign their employment with the Company at any time for any reason", without any refence to the impact of resignation as to incentive payments and bonuses.

95.    As such, Sam's Club is wrongfully withholding Plaintiff's 2022 Q1 sales bonus.

96.    Furthermore, Plaintiff has approximately seven (7) days of unused, accrued paid time off ("PTO") that Sam's Club has not tendered. When Plaintiff inquired with Sam's Club about

her unpaid 2022 Q1 bonus, Plaintiff likewise inquired about her unpaid PTO.

97.    Sam's Club failed to address Plaintiff's unpaid PTO.

98.    The value of Plaintiff's accrued, unused PTO unpaid by Sam's Club is approximately $1,190.

99.    Sam's Club has been on notice of unpaid and withheld compensation due to Plaintiff since approximately April or May of 2022 but has failed to tender said compensation.

100.    According to the Colorado Wage Act ("CWA"), when an employee quits or resigns their position, wages (which, per the CWA's definition of "wages" and "compensation", include accrued, unused PTO and bonuses or commissions earned based on agreement between an employer and employee)[3] "become due and payable upon the next regular payday." CWA, C.R.S. §8-4-109(b).

101.    Upon Plaintiff's separation of employment from Sam's Club, Sam's Club failed to tender a) Plaintiff's 2022 Q1 bonus or b) accrued, unused PTO within the next regular pay day.

102.    Plaintiff is owed additional compensation that has been improperly withheld by Sam's Club, as well as additional damages available by law.

103.    Plaintiff hereby demands payment by Sam's Club of $9,190 in satisfaction of Plaintiff's earned compensation that remains due within fourteen (14) days of Sam's Club's receipt of service of this Complaint.

104.    This Complaint serves as a proper and recognized written demand for earned, vested compensation under the CWA, C.R.S. §8-4-109(3)(a). Plaintiff's earned, vested but unpaid compensation may be tendered to undersigned counsel.

---

[3] See CWA, C.R.S. 8-4-101(14)(a)(II)-(III)

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

1-104.  Paragraphs 1 through 104 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 104 of this Count I.

105.    Plaintiff, and members of the Plaintiff Class, were each an "employee" pursuant to 29 U.S.C. §203(e).

106.    Defendants were each an "employer" pursuant to 29 U.S.C. §203(d).

107.    Plaintiff, and members of the Plaintiff Class, were not exempt from the maximum hours provisions of 29 U.S.C. §207.

108.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, the named Plaintiff, and all other Plaintiffs similarly situated, known and unknown, are entitled to compensation for all hours worked and compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) in any week during the two (2) years preceding the filing of this action.

109.   Defendants have at all times relevant hereto failed and refused to pay compensation to their workers/employees, including the Named Plaintiff herein and all other Plaintiffs similarly situated, known and unknown as described above.

WHEREFORE, Plaintiff, on behalf of herself and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)     back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b)     prejudgment interest with respect to the total amount of unpaid overtime

compensation;

      (c)    Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendants'

violations of the Fair Labor Standards Act; and

      (d)    such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-109.  Paragraphs 1 through 109 of Count I are realleged and incorporated as though set

forth fully herein as Paragraphs 1 through 109 of Count II.

110.  Sam's Club's actions as complained above were done with Sam's Club's

knowledge that the compensation policies and practices at issue were in violation of the statutes

alleged, or with a reckless disregard for whether the policies and practices were in violation of

those statutes.

111.  Through legal counsel as well as industry experience and custom, and the

extraordinary resources available to Sam's Club, Sam's Club possessed ample access to the

regulations and statutory provisions relating to the municipal, state and federal laws recited herein,

but either failed to seek out such information and guidance or did seek out the information and

guidance but failed to adhere to the principles of compliance as stated.

112.  Pursuant to the Fair Labor Standards Act, Plaintiff and all other employees similarly

situated, past or present, are entitled to compensation at a rate not less than one and one-half times

their regular rates of pay for all hours worked in excess of forty (40), in the three (3) years

preceding the filing of this complaint.

WHEREFORE, Plaintiff, on behalf of herself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(d)    such additional relief the Court deems appropriate under the circumstances.

## **COUNT III**

### **LIQUIDATED DAMAGES**
### **UNDER THE FAIR LABOR STANDARDS ACT**

1-112.  Paragraphs 1 through 112 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 112 of Count III.

113.    In denying Plaintiff and members of the Plaintiff Class compensation as described above, Defendants' acts were not based upon good faith or reasonable grounds.

114.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to Sam's Club, Sam's Club possessed ample access to the regulations and statutory provisions relating to the municipal, state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

115.    The Named Plaintiff and all other past and present employees similarly situated, known and unknown, are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiff, on behalf of herself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    liquidated damages equal to the amount of all unpaid compensation;

(b)    Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c)    such additional relief the Court deems appropriate under the circumstances.

### COUNT IV

**SUPPLEMENTAL STATE LAW CLAIM
VIOLATION OF THE COLORADO OVERTIME
AND MINIMUM PAY STANDARDS ORDER, #38**

1-115.  Paragraphs 1 through 115 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 115 of this Count IV.

116.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq.*

117.    Plaintiff, and members of the Plaintiff Class, were each an "employee" under COMPS 7 CCR 1103-1.5(A) and were not exempt from the minimum or overtime wage provisions of COMPS 7 CCR 1103-3.1, 4.1.

118.    Defendants were each an "employer" as defined by COMPS 7 CCR 1103-1.6(A).

119.    Under COMPS 7 CCR 1103-4.1, for all weeks during which Plaintiff and members of the Plaintiff Class worked more than forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

120.    Defendants' failure and refusal to pay overtime wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of COMPS 7 CCR 1103-4.1.

121.    COMPS 7 CCR 1103-8.1(A) provides that an employer who fails to pay the required amount of overtime wages due an employee under the law shall be liable to the underpaid employee or employees for the unpaid balance of the full amount of overtime wages due and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, on behalf of herself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for the three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Colorado Overtime and Minimum Payment Standards Order, #38; and

(d)    such additional relief the Court deems appropriate under the circumstances.

## COUNT V

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE COLORADO WAGE ACT

1-121.    Paragraphs 1 through 121 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 121 of this Count V.

122.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Colorado Wage Act, C.R.S. §8-4-101, *et seq.*

123.    The CWA defines wages as "[a]ll amounts for labor or service performed by employees", regardless of whether "the amount is fixed or ascertained by the standard of time". Wages, as defined by the CWA, are governed by the Act once the amounts are "earned, vested, and determinable". CWA, C.R.S. §8-4-101(14(a)(I)-(III).

124.    Plaintiff, and members of the Plaintiff Class, were each an "employee" under CWA, C.R.S. §8-104-101(5) and were not exempt from the CWA's protections.

125.    Defendants were each an "employer" as defined by CWA, C.R.S. §8-104-101(6) and were not exempt from compliance with the CWA.

126.    Pursuant to CWA, C.R.S. §8-4-101(14)(a)(II)-(III), Plaintiff and members of the Plaintiff Class, who were misclassified as exempt employees, worked hours in excess of 40 in individual work weeks which required pay at time and on-half their regular hourly rates of pay.

127.    Once Plaintiff and members of the Plaintiff Class worked hours over 40 in individual work weeks, they earned overtime compensation, although it was not paid. As such, the overtime premiums for which Plaintiff and members of the Plaintiff Class were not paid were and are "wages" as defined by the CWA, and therefore subject to the requirements of the CWA.

128.    Plaintiff and members of the Plaintiff Class did not receive overtime premiums of one and one-half time their regular rates of pay for hours worked over 40 in individual work weeks.

129.    Pursuant to CWA, C.R.S. §8-4-109(3)(b), if an employer fails to pay an employee their earned, vested and determinable wages as set forth by the CWA within fourteen (14) days of service of a written demand, the employee is entitled to a penalty of a) 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due.

130.    Plaintiff's Complaint herein serves as a valid written demand under the CWA, C.R.S. §8-4-101(15) and -109(3)(a) for unpaid overtime wages on behalf of herself and members of the Plaintiff Class .

131.    Should Sam's Club fail to tender the demanded compensation in the amount of $9,190 due to Plaintiff and members of the Plaintiff Class pursuant to the CWA within fourteen (14) days, Plaintiff and members of the Plaintiff Class will be entitled to recover penalties described by to CWA, C.R.S. §8-4-109(3)(b) and (c).

132.    Pursuant to CWA, C.R.S. §8-4-109(3)(c), if the employee can prove that the employer's failure to pay wages due under the Act, each of the penalties set forth under CWA, C.R.S. §8-4-109(3)(b) shall increase by 50%.

133.    Sam's Club's failure and refusal to pay earned overtime wages, as demanded in writing herein within the fourteen (14) day period described by the CWA, C.R.S. §8-4-109(3)(a.5), was willful and in bad faith.

134.    Plaintiff and members of the Plaintiff Class are owed all earned, unpaid overtime wages and statutory penalties, including increased penalties for willful violations of the CWA.

135.    Per CWA, C.R.S. §8-4-110, Plaintiff and members of the Plaintiff Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)    unpaid, earned and vested overtime wages;

(b)    statutory penalties of 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due;

(c)      additional statutory penalties of 50% on top of the penalties prescribed by CWA, §8-4-109(3)(b) for Sam's Club's willful violation of the CWA;

(d)      Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendants' violations of the Colorado Wage Act; and

(f)      such additional relief the Court deems appropriate under the circumstances.

## COUNT VI

### CHERYL YSLAS, INDIVIDUALLY V. WAL-MART ASSOCIATES, INC. D/B/A SAM'S CLUB AND SAM'S CLUB, A DIVISION OF WAL-MART STORES, INC.

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE COLORADO WAGE ACT

1-135.  Paragraphs 1 through 135 of Count V are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 135 of this Count VI.

136.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Colorado Wage Act, C.R.S. §8-4-101, *et seq.*

137.    The CWA defines wages as " [a]ll amounts for labor or service performed by employees", regardless of whether "the amount is fixed or ascertained by the standard of time" including "bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement between the employer and employee" and "vacation pay earned in accordance with the terms of any agreement. Wages, as defined by the CWA, are governed by the Act once the amounts are "earned, vested, and determinable". CWA, C.R.S. §8-4-101(14(a)(I)-(III).

138.    Plaintiff was an "employee" under CWA, C.R.S. §8-104-101(5) and was not exempt from the CWA's protections.

139.    Defendants were each an "employer" as defined by CWA, C.R.S. §8-104-101(6) and were not exempt from compliance with the CWA.

140.    Pursuant to CWA, 8-4-101(14)(a)(II)-(III), Plaintiff's quarterly bonus(es) and PTO were and are "wages" as defined, and therefore subject to the requirements of the CWA. Plaintiff's 2022 Q1 bonus was earned and had vested based on the agreement between the employee and employer, via the Incentive Plan, and as such were covered by the CWA.

141.    Further, Plaintiff's unused, accrued PTO was likewise earned, vested and determinable at the time of separation, and as such were covered by the CWA.

142.    Plaintiff's 2022 Q1 bonus and accrued, unused PTO were wages and said wages were vested and determinable based on Sam's Club's corporate policies and other agreements between the Parties.

143.    Pursuant to CWA, C.R.S. §8-4-109(b), when an employee quits or resigns their position, wages become due and payable upon the next regular payday.

144.    Plaintiff did not receive her 2022 Q1 bonus or PTO within the next regular payday following her resignation from Sam's Club, despite no written policy to the contrary.

145.    Pursuant to CWA, C.R.S. §8-4-109(3)(b), if an employer fails to pay an employee their earned, vested and determinable wages as set forth by the CWA within fourteen (14) days of service of a written demand, the employee is entitled to a penalty of a) 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due.

146.    Plaintiff's Complaint herein serves as a valid written demand under the CWA, C.R.S. §8-4-101(15) and -109(3)(a). Should Sam's Club fail to tender the demanded compensation

in the amount of $9,190 due to Plaintiff pursuant to the CWA within fourteen (14) days, Plaintiff

will be entitled to recover penalties described by to CWA, C.R.S. §8-4-109(3)(b) and (c).

147.   Pursuant to CWA, C.R.S. §8-4-109(3)(c), if the employee can prove that the

employer's failure to pay wages due under the Act, each of the penalties set forth under CWA,

C.R.S. §8-4-109(3)(b) shall increase by 50%.

148.   Sam's Club's failure and refusal to pay earned, accrued, unused PTO and earned,

non-discretionary bonuses, as demanded in writing herein within the fourteen (14) day period

described by the CWA, C.R.S. §8-4-109(3)(a.5), was willful and in bad faith.

149.   Plaintiff is owed all unpaid, earned and accrued bonuses and PTO, statutory

damages, including increased penalties for a willful violation of the CWA.

150.   Per the CWA, C.R.S. §8-4-110, Plaintiff is entitled to attorneys' fees and costs

incurred prosecuting her claims under the CWA.

WHEREFORE, Plaintiff, respectfully requests this Court to enter an order awarding:

(a)     unpaid earned, vested, determinable and accrued wages, including bonuses and

PTO;

(b)     statutory penalties of 125% of the amount of wages due up to and including $7,500;

and b) 50% of the amount for wages due over and above the first $7,500 due;

(c)     additional statutory penalties of 50% on top of the penalties prescribed by CWA,

§8-4-109(3)(b) for Sam's Club's willful violation of the CWA;

(d)     Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of

Defendants' violation of the Colorado Wage Act; and

(e)    such additional relief the Court deems appropriate under the circumstances.

Respectfully submitted,

**_Electronically Filed 07/29/2022_**

/s/ Samuel D. Engelson
Samuel D. Engelson
Colorado Bar No: 57295

John William Billhorn
Attorneys for Plaintiff, and those similarly
situated, known and unknown

BILLHORN LAW FIRM
7900 E. Union Ave., Suite 1100
Denver, Colorado 80237
(720)-386-9006

53 W. Jackson Blvd., Suite 1137
Chicago, Illinois 60604
(312)-853-1450